United States District Court
Southern District of Texas
**ENTERED**
September 23, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| Liberty Insurance Corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:21-cv-02119 |
| v. | § | |
| | § | |
| Omni Construction Company, Inc. and Odom Texas Development, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Liberty Insurance Corporation has filed a motion for summary judgment asserting that it owes no coverage for an arbitration award obtained against its insured, Defendant Omni Construction Company, Inc., and in favor of Defendant Odom Texas Development, LLC. Dkt. 41. The case was referred to the undersigned judge. Dkt. 37. After carefully considering the motion, Dkt. 41, Odom's response, Dkt. 46, Liberty's reply, Dkt. 47, and the applicable law, it is recommended that Liberty's motion for summary judgment be granted.

## Background

Liberty is an Illinois corporation with its principal place of business in Massachusetts. Dkt. 1 ¶ 3. Liberty issued commercial general liability and umbrella policies to Omni in Ohio, where Omni was incorporated and

maintained its principal place of business. Dkt. 1 ¶ 4; Dkt. 41-2 at 008; Dkt. 41-3 at 094; Dkt. 41-4 at 183; Dkt. 41-5 at 266 (policies); Dkt. 41-6 (Ohio Secretary of State). Those policies provided coverage for "'bodily injury' or 'property damage' caused by an 'occurrence'" during the policy periods, which spanned from January 28, 2017 to January 28, 2019.[1] Dkt. 41-2 at 008, 020 § 1(b)(1); Dkt. 41-3 at 094, 105 § 1(a); Dkt. 41-4 at 183; Dkt. 41-5 at 266.

In April 2017, Omni retained Odom to provide general contracting services for building an ALOFT brand hotel in Shenandoah, Texas. Dkt. 1, Ex. B at 2. Omni's performance deteriorated as the project progressed. *Id.* According to Odom, Omni sought unjustified charge orders, overbilled for work performed, and performed deficient work. *Id.* at 2-3. The City of Shenandoah issued a stop-work order, and liens were filed in connection with the project. *Id.* at 3. In June 2018, Omni abandoned the project, leading Odom to terminate the parties' agreement. *Id.* at 4-5.

In May 2019, Odom initiated an arbitration proceeding against Omni, alleging that Omni had breached its contractual obligations. Dkt. 1 ¶ 12; Dkt. 1-1. In December 2019, Odom's counsel provided notice of the proceeding to Omni's insurer, Liberty. Dkt. 41-1 ¶ 5. Liberty tried to investigate Odom's

---

[1] There is a discrepancy between the last effective date specified in the policies, Dkt. 41-3 at 094 (last effective date Jan. 28, 2019); Dkt. 41-5 at 266 (same), and the date stated in the affidavit of Liberty's representative, Dkt. 41-1 ¶¶ 3-4 (specifying last date as July 3, 2018). This inconsistency is not material to any issue.

2

claims but discovered that Omni had gone out of business. *Id.* ¶¶ 6-9. Omni did not appear or otherwise participate in the arbitration. Dkt. 1-3 at 1. After a hearing, and on January 5, 2021, the arbitrator awarded Odom actual damages of $5,568,151.52 for Omni's breach of contract, pre- and post-judgment interest, arbitration expenses, and $102,001.60 in attorneys' fees. Dkt. 1-3 at 2-3.

In June 2021, Liberty filed this suit against its insured, Omni, and against Odom, seeking a declaration that it owes no coverage for the arbitration award. Dkt. 1 ¶¶ 30-33. Omni did not appear, leading to entry of a default judgment against it. Dkt. 21. Odom asserted a counterclaim against Liberty, Dkt. 9, but the Court granted Liberty's motion to dismiss it. Dkts. 13, 38, 40. Liberty has now moved for summary judgment on its request for a no-coverage declaration against Odom. Dkt. 41.

## Legal Standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964

3

F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). When resolving a motion for summary judgment, the court must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

## Analysis

### I. The insurance policies are governed by Ohio law, not Texas law.

Resolution of the issues depends in large part on what state's law applies. Liberty maintains, and Odom does not dispute, that Ohio law would conclusively negate coverage for its claimed losses from Omni's defective workmanship or delays. *See Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 979 N.E.2d 269, 275 (Ohio 2012) (holding damages from faulty workmanship are not claims for "property damage" caused by an "occurrence" under a commercial general liability policy); *Westfield Ins. Co. v. Coastal Grp., Inc.*, 2006 WL 120041, at *2 (Ohio Ct. App. Jan. 18, 2006) (holding construction delay "is a risk inherent in [a] construction contract[ ], not an 'accident' and therefore, not an 'occurrence'"); Dkt. 47 at 6 (noting Omni's waiver of response to this issue). In contrast, the parties agree that Texas law does not foreclose treating property damage stemming from faulty work as a covered "occurrence." *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1,

4

16 (Tex. 2007) (holding that insured's faulty workmanship can constitute an "'occurrence' when 'property damage' results from the 'unexpected, unforeseen or undesigned happening or consequence' of the insured's negligent behavior"); Dkt. 46 at 9-11; Dkt. 47 at 7.

The divergent approaches of Ohio and Texas law to the underlying issue warrant a choice-of-law analysis. As a federal court sitting in diversity, this Court applies the choice-of-law principles of the forum state. *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). "For contract cases, Texas uses the 'most significant relationship' test described in Section 6 of the Restatement (Second) of Conflict of Laws ('Restatement'), in light of certain 'contacts' listed" in either or both Sections 188 and 196 of the Restatement. *Coachmen Indus., Inc. v. Willis of Ill., Inc.*, 2008 WL 1912861, at *2 (S.D. Tex. Apr. 28, 2008) (citing, *inter alia, Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 442-43 (Tex. 2007), and *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997)) (footnotes omitted); *see also, e.g.*, *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 299 (5th Cir. 2020) (recognizing that Texas law follows the most significant relationship test under the Restatement (Second) of Conflicts of Laws § 188(1) (1971)). Based on the choice-of-law analysis below, the Court concludes that the coverage question is controlled by Ohio law.

A.     **Article 21.42 of the Texas Insurance Code does not apply.**

Under Section 6 of the Restatement, the Court first considers "whether the particular substantive law is subject to a clear choice of law determination by the Legislature of the forum state." *Citizens Ins. Co. of Am.*, 217 S.W.3d at 443 (citing *Marmon v. Mustang Aviation*, 430 S.W.2d 182 (Tex. 1968); Restatement (Second) of Conflict of Laws § 6(1) (1971)). The Texas statute cited by Odom provides:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or a the home office of the company or corporation issuing the same.

Tex. Ins. Code Ann. art. 21.42.

As Odom notes, article 21.42 "applies to an insurance contract when: (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). But Odom fails to acknowledge binding authority limiting the reach of article 21.42, to avoid giving it extraterritorial effect. *See Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 390-91, 399 (1924) (applying

6

predecessor statute to policy issued in Tennessee would unconstitutionally "regulate business outside the state of Texas and control contracts made by citizens of other states in disregard of their laws"); *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968) (holding, based on *Aetna Life*, that article 21.42 could not "be given extraterritorial effect," such that Kansas, not Texas law, governed a policy executed in Kansas).

Summarizing these principles, the Fifth Circuit explained that "article 21.42 [is] designed only to assure that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas, when and only when those contracts are made in the course of the company's Texas business." *Howell v. Am. Life Stock Ins. Co.*, 483 F.2d 1354, 1360 (5th Cir. 1973) (discussing *Austin Bldg. Co.*) (emphasis removed); *see also Butler v. Mut. Life Assur. Co. of Can.*, 600 F.2d 532, 534 (5th Cir. 1979) (adhering to this principle for policy signed in Canada, where "[n]o events regarding the making of the contract occurred in Texas"). Texas state appellate decisions are consistent with these authorities. *See, e.g., Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 292 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (rejecting application of article 21.42 when insured was registered in Illinois and had principal place of business in California, even though some of its affiliates and insured physicians were Texas residents).

There is no dispute that Omni, the insured, was incorporated and maintained its principal place of business in Ohio, and thus is an inhabitant of Ohio. Dkt. 1 ¶ 4; Dkt. 41-6; *Reddy Ice Corp.*, 145 S.W.3d at 344 (holding that "article 21.42 restricts a corporation's inhabitancy to its place of incorporation"); *see also Jones v. Francis Drilling Fluids, Ltd.*, 2008 WL 5158268, at *5 (S.D. Tex. Dec. 9, 2008) (finding article 21.42 inapplicable when insureds were not incorporated in Texas). The policies were issued to Omni in Ohio. *See* Dkt. 41-2 at 008; Dkt. 41-3 at 094; Dkt. 41-4 at 183; Dkt. 41-5 at 266. And although Liberty does not dispute that it does business in Texas, *see* Dkt. 47 at 4, there is no indication that it issued these policies in connection with its Texas business, given that they were issued to Omni in Ohio. *See, e.g.*, *Jones*, 2008 WL 5158268, at *5 (similar lack of evidence that insurer issued the policy "in the course of [its] business in Texas"). Likewise, the fact that Omni had an office in Texas does not override its status as an Ohio inhabitant exempt from article 21.42. *See Reddy Ice Corp.*, 145 S.W.3d at 344 (concluding, despite Reddy Ice's Texas principal place of business, that its incorporation in Nevada excluded application of article 21.42). Article 21.42 does not apply.

Odom misplaces reliance on *Aggreko, LLC v. Chartis Specialty Ins. Co.*, 2018 WL 4050498 (E.D. Tex. Mar. 7, 2018), *aff'd on other grounds*, 942 F.3d 682, 696 (5th Cir. 2019). There, a district court found that article 21.42 extended Texas law to a dispute between a primary insurer (Gray), and an

8

excess insurer (ASIC), an entity that was an additional insured (Aggreko), and its insurer (Indian Harbor). *Id.* at *1-3. Gray maintained that certain agreements executed with third parties (the Breneks) in the underlying suit against its insured (Guichard) had exhausted the policy limits and relieved Gray of any further duty to defend or indemnify the additional insured, Aggreko. *Id.* at *3.

When analyzing article 21.42's applicability to the Gray policy, the *Aggreko* court did not consider the fact that the insured, Guichard, was a Louisiana company. *See id.* at *7-8. Instead, the court emphasized that the policy proceeds were payable to the Breneks, as third-party beneficiaries and citizens of Texas, "thus satisfying the first prong of Article 21.42." *Id.* at *8. The *Aggreko* court further discounted the fact that the policy was "negotiated, executed, and premiums paid" outside of Texas because "the instigating events arose in Texas." *Id.* (quoting *Am. Home Assur. Co. v. Safeway Steel Prods. Co.*, 743 S.W.2d 693, 697 (Tex. App.—Austin 1987, writ denied)).

As another district court noted, the *Aggreko* court's reasoning does not comport with controlling law pronounced in *Howell*, 483 F.2d at 1360. *See Zurich Am. Ins. Co. v. Arch Ins. Co.*, 2020 WL 4718842, at *4 (W.D. Tex. June 10, 2020) (finding *Aggreko* "unpersuasive"), *report and recommendation adopted*, 2020 WL 4720096 (W.D. Tex. July 16, 2020), *rev'd on other grounds*, 20 F.4th 250 (5th Cir. 2021). The *Aggreko* court's focus on the Texas locus of

the underlying events conflicts with *Howell*'s instruction that courts must "examine where the insurance policies were made and executed." *Zurich*, 2020 WL 4718842, at *4 & n.6 (citing *Howell*, 483 F.2d at 1359-60, and noting that *Am. Home Assur.*, 743 S.W.2d at 697, which was quoted in *Aggreko* "failed to mention or discuss Article 21.42's requirement that the insurance contract be issued in the course of the insurer's Texas business"). In this case, the policy was issued by an Illinois corporation with its principal place of business in Massachusetts and executed by an Ohio-based and Ohio-incorporated company in Ohio. None of this occurred in Texas.

Notably, too, *Howell* limits article 21.42 to insurance policies between a *Texas resident* and an insurance company doing business in Texas. 483 F.2d at 1360. Third-party Odom's status as a Texas company does not matter because Omni—the party who bargained for and executed the insurance policy—was incorporated and based in Ohio. *See, e.g.*, *Hefner v. Repub. Indm. Co. of Am.*, 773 F. Supp. 11, 13 (S.D. Tex. 1991) (rejecting application of article 21.42 to policy "made and signed in California" by insured who is "a California resident," even though underlying assault occurred in Texas and proceeds were sought by a Texas resident). After all, Odom's rights to the policy proceeds, if any, are derivative of Omni's rights.[2] *See Tex. Farmers Ins. Co. v. Gerdes By*

---

[2] This principle is equally true under Ohio law. *See Conold v. Stern*, 35 N.E.2d 133, 140 (Ohio 1941) ("Third parties may not alter [the] terms [of an insurance policy] or

10

*& Through Griffin Chiropractic Clinic*, 880 S.W.2d 215, 219 (Tex. App.—Fort Worth 1994, writ denied) ("A third-party beneficiary may not claim greater rights than those afforded to the name insured ...."); *see also, e.g.*, *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 (Tex. 1998) (holding that third-party beneficiaries to a policy are "bound by the conditions precedent in the insurance policy"). The mere happenstance that Omni is defunct—and policy proceeds are being sought by a third-party beneficiary in Texas—should not alter the scope of coverage under a policy that Omni negotiated and obtained in Ohio.

In sum, the Texas location of the underlying events cannot extend article 21.42 extraterritorially to regulate an insurance contract between non-Texas citizens that was made outside of Texas. *See Austin Bldg. Co.*, 432 S.W.2d at 699-701 (holding that article 21.42 "cannot be given extraterritorial effect" and rejecting builder's invocation of Texas law when construing policy issued to Kansas company in Kansas whose facility in Texas caught fire and damaged builder's property) (citing and applying *Dunken*, 266 U.S. at 399). Accordingly, article 21.42's choice-of-law directive does not apply to the coverage determination here.

---

make it more beneficial to them than it is to the insured for whose protection it was issued.").

**B.     Ohio law has the most significant relationship with this dispute.**

Having dispensed with article 21.42, the Court agrees with Liberty that the choice-of-law question hinges on which state has the most significant relationship to the parties' dispute. *See, e.g.*, *E. Concrete Materials, Inc.*, 948 F.3d at 299 (invoking this test); *Reddy Ice Corp.*, 145 S.W.3d at 344 ("As no statutory directive governs the dispute, we must determine which state has the most significant relationship to the issue presented for determination."); Dkt. 41 at 6-8. Odom fails to address this issue. *See* Dkt. 46 at 6-9. In any event, the most significant relationship test dictates the application of Ohio law to the coverage question.

Under the Restatement, "Texas courts consider the following factors:

- The needs of the interstate and international systems;
- The relevant policies of the forum;
- The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
- The protection of justified expectations;
- The basic policies underlying the particular field of law;
- Certainty, predictability, and uniformity of result; and
- Ease in the determination and application of the law to be applied."

*E. Concrete Materials, Inc.*, 948 F.3d at 299 (addressing Restatement § 6 quoted in *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 54 (Tex. 1991)).

Nonetheless, "the place of contracting, not the place of the underlying incident, is the dominant consideration for choice of law in an insurance-coverage dispute." *Id.*

These authorities confirm that Ohio has the most significant relationship to the question of whether Omni's policies cover the arbitration award. The insurance policy was executed in Ohio, not Texas. The policy's national scope means that Texas does not have a peculiar or overriding interest in having its law apply, even though the underlying loss occurred in Texas. To the contrary, "giving [controlling] weight to the location of the insured risk would potentially subject an insurer, through one contract, to the laws of numerous states on issues that are more appropriately determined by the state's law that promulgated the policy form at issue." *Reddy Ice Corp.*, 145 S.W.3d at 345; *see also E. Concrete Materials, Inc.*, 948 F.3d at 300 (quoting this passage from *Reddy Ice*). Applying Ohio law would ensure certainty, predictability, and uniformity and further satisfy Omni's (and Liberty's) justified expectations that the law of the state where Omni acquired the policy would govern the scope of coverage. *See E. Concrete Materials, Inc.*, 948 F.3d at 300 (rejecting insured's invocation of New Jersey law, where incident occurred, when policy was issued in Texas). The relevant factors weigh in favor of Ohio law.

**II.     Ohio law forecloses coverage for the arbitration award.**

Applying Ohio law, the Court agrees with Liberty's position that the policies provide no coverage for the damages specified in Odom's arbitration award. Dkt. 41 at 8-12. Odom neither addresses nor disputes this issue. *See* Dkt. 46 at 9-13 (relying exclusively on Texas law).

Construing identical policy language, the Ohio Supreme Court held that "claims of defective construction or workmanship" do not qualify as "claims for 'property damage' caused by an 'occurrence' under a commercial general liability policy ...." *Custom Agri Sys., Inc.*, 979 N.E.2d at 484. Under the policy, the term "occurrence" is defined as an "accident." *Id.* at 482; *see also, e.g.*, Dkt. 41-2 at 034 § 13 (same definition in Omni's policy). And the plain meaning of "accident" requires a "fortuitous" event. *Custom Agri Sys., Inc.*, 979 N.E.2d at 482. But "claims for faulty workmanship ... are not fortuitous in the context of a CGL policy like the one here." *Id.*

The Ohio Supreme Court's reasoning applies with equal force to damages stemming from a contractor's project delays. In the same opinion, the Court endorsed the conclusion that a contractor's delay in rectifying defective workmanship is not an "accident" and thus does not arise from a covered "occurrence." *Id.* at 482 (summarizing and embracing *Coastal Group, Inc.*, 2006 WL 120041, at *2).

Here, the arbitration award consists of primarily of liquidated damages, economic losses, and other losses stemming from Omni's defective work or delay. Dkt. 1-3 at 3. Even if all those losses qualified as "property damage," Ohio law provides that those losses did not rise from a covered, fortuitous "occurrence." *See Custom Agri Sys., Inc.*, 979 N.E.2d at 482; *Coastal Grp., Inc.*, 2006 WK 120041, at *2 ("[D]elay is a risk inherent in construction contracts, not an 'accident' and therefore, not an 'occurrence.'").

As a matter of Ohio law, there is no coverage for any component of the arbitration award. Liberty's motion for summary judgment therefore should be granted.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that this Court **GRANT** Plaintiff Liberty Insurance Corporation's motion for summary judgment (Dkt. 41). It is further **RECOMMENDED** that this Court **DECLARE** that Liberty owes no coverage for the January 5, 2021 arbitration award issued against Defendant Omni Construction Company and in favor of Defendant Odom Texas Development, LLC, under the commercial general liability policies (Nos. TB7-Z51-291536-027 and TB7-Z51-291536-028) and umbrella policies (TH7-Z51-291536-057 and TH7-Z51-291536-058) issued to Omni.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed September 23, 2022, at Houston, Texas.

*(signature)*
Yvonne Y. Ho
United States Magistrate Judge